UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAYMIE PEREZ, on behalf of C.P.,

    Plaintiff,

v.                                                                                                   Case No: 8:16-cv-3536-T-35JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## ORDER

Plaintiff, Jaymie Perez, on behalf of C.P. ("Claimant"), her minor child, seeks judicial review of the denial of Claimant's claim for supplemental security income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.[1]

## BACKGROUND

### A. Procedural Background

On July 11, 2013, Plaintiff filed an application for SSI on Claimant's behalf. (Tr. 144–53.) The Commissioner denied Plaintiff's claim both initially and upon reconsideration. (Tr. 66–74, 102–04.) Plaintiff then requested an administrative hearing. (Tr. 110–11.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff and Claimant appeared and testified. (Tr. 35–57.) Following the hearing, the ALJ issued an unfavorable decision finding Claimant not disabled and accordingly denied Claimant's claim for SSI benefits. (Tr. 13–28.) Subsequently, Plaintiff

---

[1] On December 5, 2017, the undersigned entered a report and recommendation to the Honorable Mary S. Scriven regarding Plaintiff's Complaint. (Dkt. 24.) After the report and recommendation was entered, Judge Scriven entered an order approving the parties' consent to the undersigned's jurisdiction, and the case was reassigned to the undersigned. (Dkt. 25.) Accordingly, the report and recommendation (Dkt. 24) is stricken in light of this Order.

requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1–9, 34.) Plaintiff then timely filed a complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

B.     **Factual Background and the ALJ's Decision**

Plaintiff claimed that Claimant's disability began on the day of Claimant's birth, August 14, 2007. (Tr. 144.) Claimant was a preschool-aged child on the date the application was filed and a school-aged child at the time of the ALJ's decision. (Tr. 16.) Plaintiff alleged Claimant's disability due to "PDD," global developmental delays, and language delays. (Tr. 240.)

After conducting a hearing and reviewing the evidence of record, the ALJ determined that Claimant has never engaged in substantial gainful activity. (Tr. 16.) The ALJ then determined that Claimant had the following severe impairments: a cognitive processing disorder, a speech/language disorder, a motor/coordination disorder, and moderate sensorineural hearing loss. (*Id.*) Notwithstanding the noted impairments, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"). (Tr. 17.) The ALJ further found that Claimant did not have an impairment or combination of impairments that functionally equaled a Listing. (*Id.*) In making this determination, the ALJ concluded that Claimant had less than marked limitations in the areas of acquiring and using information, attending and completing tasks, moving about and manipulating objects, and his health and physical well-being, and had no limitations in interacting and relating with others and caring for himself. (Tr. 17–28.) Accordingly, the ALJ found Claimant not disabled. (Tr. 28.)

**APPLICABLE STANDARDS**

An individual younger than the age of eighteen is considered to be disabled if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations and that can be expected to result in death or that has lasted, or can be expected to last, for at least twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i).

Child disability claims are assessed under a three-step sequential analysis. 20 C.F.R. § 416.924(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is engaging in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; and (3) whether the claimant's impairment or combination of impairments meets, medically equals, or functionally equals a Listing. *Id.*

To "meet" a Listing, a child must actually suffer from the limitations specified in the Listing. *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1279 (11th Cir. 2004). To "medically equal" the limitations found in a Listing, the child's limitations must be "at least of equal medical significance to those of a listed impairment." *Id.* (citing 20 C.F.R. § 416.926). Alternatively, if a child's impairment does not meet or medically equal a Listing, a child may nonetheless be found disabled if the child's impairment "functionally equals" a Listing, which is determined by the extent to which the impairment limits the child's ability to function in the following six domains of life: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *Id.*; 20 C.F.R. § 416.926a(b)(1)(i)–(vi). A child's limitations "functionally equal" those in the Listings, and thus constitute a disability, if the child's limitations are "marked" in two of the six domains or are "extreme" in one of the six domains. 20 C.F.R. § 416.926a(a), (d). A child's limitation is "marked" when it is "more than

moderate" but "less than extreme." *Id.* § 416.926a(e)(2)(i). A marked limitation "interferes seriously" with a child's "ability to independently initiate, sustain, or complete activities." *Id.* An "extreme" limitation is a limitation that is "more than marked" and "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i).

A determination by the Commissioner that a child is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

# ANALYSIS

Plaintiff challenges the ALJ's decision on the following ground: the ALJ erred by failing to find that Claimant's impairments do not functionally equal a Listing. Specifically, Plaintiff contends the ALJ's conclusions that Claimant has less than marked limitations in acquiring and using information and attending and completing tasks are not supported by substantial evidence, contending that Claimant has extreme limitations in these two domains of life. (Dkt. 22 at 7–9.) For the reasons that follow, this contention does not warrant reversal.

The regulations provide that the domain of acquiring and using information evaluates how well a child acquires and learns information, as well as the efficacy of the child's use of learned information. 20 C.F.R. § 416.926a(g). Preschool-aged children (ages three to six) "should begin to learn and use the skills that will help [the child] to read and write and do arithmetic when [the child is] older," including "[u]sing words to ask questions, give answers, follow directions, describe things, explain what [the child] mean[s], and tell[ing] stories." *Id.* § 416.926a(g)(2)(iii). School-aged children (ages six to twelve), "should be able to learn to read, write, and do math, and discuss history and science" and "use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing [the child's] own ideas, and by understanding and responding to the opinions of others." *Id.* § 416.926a(g)(iv). Nonexclusive examples of limitations in acquiring and using information are a child's failure to understand words about space, size, or time, inability to rhyme words or sounds, difficulty recalling important things learned at school the prior day, difficulty solving math questions, and speaking in short, simple sentences. *Id.* § 416.926a(g)(3)(i)–(v).

The domain of attending and completing tasks examines a child's ability to focus and maintain attention and finish activities at an appropriate pace. *Id.* § 416.926a(h). Preschool-aged

children "should be able to pay attention when [ ] spoken to directly, sustain attention to [ ] play and learning activities, and concentrate on activities like putting puzzles together or completing art projects," as well as maintain the focus sufficient to complete certain tasks independently, such as dressing, eating, and cleaning up toys. *Id.* § 416.926a(h)(2)(iii). School-aged children "should be able to focus [ ] attention in a variety of situations in order to follow directions, remember and organize [ ] school materials, and complete classroom and homework assignments." *Id.* § 416.926a(h)(2)(iv). Nonexclusive examples demonstrating limitations in attending and completing tasks are the child's requiring extra supervision or being easily startled, distracted, overreactive, sidetracked, distracting to others, easily frustrated, and quick to quit tasks. *Id.* § 416.926a(h)(3)(i)–(v).

As an initial matter, in support of Plaintiff's argument that Claimant has extreme limitations in acquiring information and completing tasks, Plaintiff cites a neurological psychological evaluation and neuropsychiatry treatment notes, which are Exhibits 21F and 22F of the record. (Dkt. 22 at 8.) This evidence, however, was not before the ALJ (Tr. 32–33), but was submitted to the Appeals Council (Tr. 5–6). The Appeals Council denied Plaintiff's request for review, concluding that Plaintiff's submissions did "not provide a basis for changing the Administrative Law Judge's decision." (Tr. 1–2.) The Court cannot consider this evidence because, as here, when "the [Appeals Council] has denied review, [reviewing courts] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998); *Wilson v. Comm'r of Soc. Sec.*, 647 F. App'x 951, 952 (11th Cir. 2016) (citing *Falge*, 150 F.3d 1320, and holding that "[i]f the applicant attacks only the ALJ's decision, [the reviewing court] may not consider evidence that was presented to the Appeals Council but not to the ALJ").

As to Plaintiff's remaining argument, Plaintiff restates the ALJ's conclusion that although Claimant has a cognitive processing disorder, he has IQ scores within the average range. (Dkt. 22 at 7.) Plaintiff argues, however, that "[d]ue to the nature of the claimant's condition, IQ scores are not necessarily the only indication of deficits in acquiring information." (*Id.* at 7–8.) In evaluating Claimant's ability to acquire and use information, the ALJ reviewed a November 2012 psychological report prepared by Licensed School Psychologist Halon Bodden, Ph.D. (Tr. 23, 371–77.) Citing this report, the ALJ concluded that although Claimant has a cognitive processing disorder that is a severe impairment (Tr. 16), Claimant's IQ scores are "in the middle of the average range." (Tr. 23.) In the report, Dr. Bodden found Claimant's score on short-term memory testing within the "**Low Average** range of scores" for his age level and explained that Claimant "will find Short-Term Memory (an auditory task), to be difficult," because of Claimant's difficulty "pair[ing] auditory information with the visual representation of that auditory information or vice versa." (Tr. 375) (emphasis in original.) Dr. Bodden found these characteristics indicative of a processing disorder. (*Id.*) However, Dr. Bodden concluded that Claimant's IQ score fell "within the **Average** range of ability." (Tr. 374) (emphasis in original.)

Upon review of Dr. Bodden's report, the ALJ accurately summarized Dr. Bodden's findings in reaching the conclusion that Claimant has less than marked limitations in the areas of acquiring and using information and attending and completing tasks. (Tr. 23, 24.) Plaintiff argues that IQ scores are not the only indication of deficits in acquiring information. (Dkt. 22 at 8.) The ALJ's decision, however, shows that the IQ testing results in Dr. Bodden's report were not the only evidence the ALJ relied upon in determining that Claimant has less than marked limitations in acquiring and using information and attending and completing tasks. *See* 20 C.F.R. § 416.924a(a)(1)(ii) (stating that "we will not rely on test scores alone when we decide whether you

are disabled"). Instead, as discussed below, the ALJ evaluated medical and opinion evidence to reach his conclusion that Claimant had less than marked limitations in these two domains of life.

The ALJ concluded that the evidence showed that Claimant had moderate receptive and mild expressive language delays but had normal articulation and vocabulary. (Tr. 21.) This conclusion, the ALJ found, was bolstered by evidence that Claimant had average IQ scores and was enrolled in "mainstream classes" with an additional specialized speech and language educational plan. (*Id.*) Specifically, the ALJ reviewed the following evidence to conclude that Claimant's cognitive processing limitations were less than marked: July 2010 testing administered by a speech-language pathologist in which the pathologist concluded that Claimant's communication was in the "Mildly Developmentally Delayed range" (Tr. 18, 172–74); an April 2012 speech and language consultation in which the speech pathologist concluded that Claimant has "a moderate receptive language delay, a mild expressive language delay," "average one-word vocabulary skills," and moderately delayed articulation skills (Tr. 19, 330–34); an April 2012 disability evaluation in which the evaluating physician noted that Claimant had developmental delays and would need special assistance during "the early years of school" (Tr. 19, 336–37); an October 2012 speech and language evaluation in which the speech pathologist concluded that Claimant has a moderate receptive language delay and a mild expressive language delay, although his articulation and vocabulary skills are normal for his age (Tr. 19, 365–68); Dr. Bodden's November 2012 report in which Dr. Bodden found that Claimant had a processing disorder but also had average testing results (Tr. 20, 371–77); and the opinions of state agency consultants who found that Claimant had less than marked limitations in acquiring and using information and attending and completing tasks (Tr. 21, 70–71, 82–83).

Thus, the ALJ's conclusions about Claimant's functioning in the two domains of life at issue were not based solely on Claimant's IQ test scores but, instead, were based on an evaluation of medical and opinion evidence. Substantial evidence supports the ALJ's conclusions that although Claimant had limitations from his cognitive processing condition, these limitations did not rise to the level of marked limitations. *Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 852 (11th Cir. 2015) (affirming the ALJ's decision that a child's limitations were less than marked even though the evidence showed that the child "suffers from some limitation in the area of acquiring and using information and requires support in the academic sphere"); *Dunlop v. Comm'r of Soc. Sec.*, 518 F. App'x 691, 693 (11th Cir. 2013) (concluding that substantial evidence supported the ALJ's decision that a child's limitations did not functionally equal a Listing even if evidence suggested that the child's impairments were more severe than the ALJ determined). Moreover, the Court's scope of review is limited; the Court may not re-weigh the evidence or substitute its own judgment for that of the ALJ. *Bloodsworth*, 703 F.2d at 1239. Accordingly, for the reasons stated herein, the Court concludes that reversal is unwarranted.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner

and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on December 11, 2017.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record